.FRANK BOYLIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21039. Promulgated April 4, 1950.

*Paul N. Wiener, Esq.*, for the petitioner.
*Sheldon V. Ekman, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: The question here is whether the petitioner's wife was a real partner, and that depends upon their intent. *Commissioner* v. *Culbertson*, 337 U. S. 733. The petitioner relied solely upon

the facts agreed to by the parties and called no witness. Cf. *Max Cohen*, 9 T. C. 1156, 1162; *Wichita Terminal Elevator Co.*, 6 T. C. 1158, 1165; affd., 162 Fed. (2d) 513. The respondent called Dorothy, the alleged limited partner, and her testimony supports the Commissioner's determination. The petitioner's counsel argues that her testimony is not reliable because of her break with the petitioner and because she may benefit if the taxes shown on her return are refunded. She was subpoenaed as a witness. The Court has carefully considered her appearance, demeanor, manner of testifying, and certain corroborating documents which she produced, as well as the circumstances mentioned by the petitioner, in the light of the entire record, and believes that she has told the truth as she saw it. Her testimony was not contradicted or weakened except as the agreement of October 2, 1944, might contradict it. Due consideration has been given to that document, but its terms are not conclusive on the Court. *Converse & Co.*, 1 B. T. A. 742; *Park Chamberlain*, 41 B. T. A. 10; *Elliot Paint & Varnish Co.*, 44 B. T. A. 241; *Haverty Realty & Investment Co.*, 3 T. C. 161; *Stern* v. *Commissioner*, 137 Fed. (2d) 43.

Dorothy signed the agreement of March, 1944, to accommodate the petitioner, but knew only vaguely that it had to do with a partnership in which she was to be a partner in some way so that her husband could benefit taxwise. She did not know what rights, if any, she had under the agreement. Her knowledge of the borrowing of $15,000 and the use to which that money was to be put was likewise vague, because her husband would not discuss business affairs with her. She knew practically nothing about the business. She testified, and this is the only direct evidence of intent in the record aside from the agreement, that she never really intended to join with her husband as an actual partner of any kind in the business and that he told her to sign the papers so that his income tax would be reduced.

No other purpose in having her sign appears in the record. The earnings were all out of proportion to the capital involved. It does not appear that the business needed money. Dorothy could not furnish either money or credit. The $15,000 was apparently borrowed on the petitioner's credit. She took no part, even the part which a limited partner might take, in the business. She saw no books and did not know that she had any right to see them. She claims that all of the money which she received was in settlement of marital rights and differences between her and the petitioner. Although she had employed counsel, she apparently thought that her husband was using his partnership funds to settle with her in connection with the divorce and was not, in part, giving her partnership earnings to which she was entitled. She actually received $25,000 net, the amount she says he agreed to pay. The divorce settlement and her supposed share of the

1944 partnership earnings are tied in, one with the other. The alleged partnership was changed promptly after the divorce, as soon as the books were closed, to exclude Dorothy. She received nothing for her alleged right to participate in the business as a limited partner. Cf. *Smith* v. *Henslee*, 173 Fed. (2d) 284, in which the wife continued as a partner for more than a year after the divorce and then was paid for her interest. In short, the arrangements in regard to the partnership were always made to suit the convenience of the petitioner as it appeared at the moment.

Not only does the stipulation fail to show that the Commissioner erred in holding that Dorothy's purported participation in the partnership was lacking in genuineness, but the record as a whole shows affirmatively that the petitioner did not in good faith and acting with a business purpose intend to have Dorothy join with him and Hoffman in the conduct of the business even to the extent of a limited partner. *Commissioner* v. *Culbertson*, *supra*.

The agreement relied upon by the petitioner was executed about March 17, 1944, yet it was dated back to January 2, 1944. Obviously, one-half of all 1944 earnings of the business up to March 17 belonged to the petitioner, so that he could not escape Federal income tax thereon by any device short of subsequent losses.

*Decision will be entered for the respondent.*